IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JAMES BAKER,**                                     CASE NO. 3:24 CV 1762

      Plaintiff,

      v.                                            JUDGE JAMES R. KNEPP II

**THE FREMONT COMPANY,**

      Defendant.                         **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Currently pending before the Court is Defendant The Fremont Company's Motion to Compel Arbitration (Doc. 6) and dismiss, or in the alternative stay, the Complaint of Plaintiff James Baker and opt-in Plaintiff Zach Arnett (collectively "Plaintiffs") (Doc. 1). Plaintiffs opposed (Doc. 8) and Defendant replied (Doc. 10). Plaintiffs also filed a Motion for Leave to File Sur-Reply (Doc. 11), which Defendant opposed (Doc 12), and Plaintiffs replied (Doc 13). Plaintiffs then filed a Notice of Supplemental Authority (Doc. 15), to which Defendant replied (Doc 16). Jurisdiction is proper under 28 U.S.C. § 1331. For the following reasons, the Court grants Defendant's Motion to Compel Arbitration and stays the proceedings. The Court further denies Plaintiff's Motion for Leave to file Sur-Reply *Instanter*. Accordingly, the case before this Court is stayed pending arbitration.

### BACKGROUND

On October 10, 2024, Baker filed this Collective and Class Action Complaint on behalf of himself and others "similarly situated" against Defendant, his employer, alleging he and similarly

situated individuals were not paid overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). (Doc. 1).

Baker and other employees are required to wear a uniform and personal protective equipment ("PPE"), which must be donned before clocking in and removed after clocking out. *Id.* at ¶¶ 28-29. Baker argues that time spent donning PPE is integral to the employees' activities and therefore is compensable work time under the FLSA. *Id.* at ¶¶ 30, 35. Baker contends Defendant does not compensate employees for the time spent donning and doffing PPE, washing hands, or related walking and waiting time – all of which occurs off the clock. *Id.* at ¶ 40. He alleges this results in unpaid time, including overtime, in violation of the FLSA. *Id.* at ¶ 43. Baker also alleges Defendant has on at least one occasion altered his clock-in time, resulting in unpaid work time. *Id.* at ¶ 42.

On October 22, 2024, opt-in Plaintiff Zach Arnett filed a Notice of Filing Consent form to join the Collective Action. (Doc. 5).

The Onboarding Process

Baker completed an application for employment on August 23, 2023, and Arnett likewise on September 22, 2023. (Stark Decl., at ¶¶ 5-6)[1]. As part of the onboarding process, all new hires are required to review and sign document entitled "Agreement To Employer's Right To Elect Arbitration" (the "Agreement"). *Id.* at ¶¶ 10-11. The relevant portion of the Agreement is as follows:

> I understand and acknowledge that if I elect to pursue any matter arising out of my employment or the cessation thereof in either federal or state court, The Fremont Company has the right to elect to have such matter resolved by final and binding arbitration. This Agreement applies to all actions brought by me or on my behalf, under federal, state, and local statutory or common law, including but not limited

---

1. David Stark's Declaration is located at ECF Doc. 6-1.

2

to the Age Discrimination in Employment Act, Title VII, the Americans with Disabilities Act, as amended, the law of contract, and the law of tort.

The Fremont Company may exercise its election by giving written notice to me or my legal counsel within 60 days after I have informed The Fremont Company in writing of my intention to seek redress through the courts or The Fremont Company's receipt of a formal complaint filed in court, whichever occurs last.

\* \* \*

The only disputes which are not included within The Fremont Company's right to elect arbitration are:

- A claim for workers' compensation benefits; or
- A claim for benefits under a Company plan which provides its own arbitration procedure.

The arbitration will be conducted in accordance with FMCS Policies and Procedures, unless otherwise agreed. The arbitration will be held at a mutually agreeable time and location. All fees and expenses of the arbitration, including a transcript if either party requests, will be borne by the parties equally. Each party will pay for the fees and expenses of such party's own attorneys, experts, witnesses, and preparation and presentation of proofs and post-hearing briefs.

\* \* \*

I understand that my consent to this agreement does not create a contract of employment and that my relationship with The Fremont Company remains "at-will."

I understand that this Agreement does not give me the right to elect binding arbitration and that such a right is reserved exclusively to The Fremont Company. I understand that The Fremont Company's election of binding arbitration would preclude my right to pursue legal action in any state or federal court and would be my exclusive remedy. I also understand that if The Fremont Company elects binding arbitration, I will not have a right to a trial by jury.

In consideration of employment or continued employment, I agree that The Fremont Company has the right to elect binding arbitration, as set forth in this Agreement. This Agreement is binding upon me, my heirs, successors, and assigns.

(Doc. 6-1, at 15).

Prospective employees are provided a chance to review the Agreement and then asked to sign it, indicating they have read and understand the terms. (Stark Decl., at ¶ 11). New hires are

then prompted to electronically sign a second time to affirm that they agree to be bound by the Agreement. *Id.* The new hire then clicks a box affirming again that they are legally bound by the Agreement. *Id.* at ¶ 12.

Baker signed the Agreement on August 28, 2023. *Id.* at ¶ 13. Arnett signed the Agreement on September 26, 2023. *Id.* at ¶ 14. Both were hired at Defendant's Rockford, Ohio, plant. *Id.* at ¶¶ 5-6.

### STANDARD OF REVIEW

Motions to compel arbitration are treated like motions for summary judgment. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Courts may consider both the pleadings and additional evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party. *Id.* "The burden is on the party opposing arbitration to show that the agreement is not enforceable." *Townsend v. Stand Up Mgmt.*, 2019 WL 3729266, at *2 (N. D. Ohio) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). "In order to meet this burden, 'the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard.'" *Id.* (quoting *Great Earth*, 288 F.3d at 889).

Under the Federal Arbitration Act ("FAA"), if a party to an arbitration agreement refuses to comply, the aggrieved party may petition the district court with jurisdiction over the underlying matter for an order to compel arbitration as provided in the agreement. 9 U.S.C. § 4. The procedure for determining whether to grant a motion to compel is as follows:

> first, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

4

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). Additionally, "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); *see also Huffman v. Hilltop Cos.*, 747 F.3d 391, 394-95 (6th Cir. 2014) (discussing "the strong federal policy" and "strong presumption in favor of arbitration").

## DISCUSSION

Defendant moves to compel arbitration under Sections 3 and 4 of the FAA on the grounds that Plaintiffs each executed a legally enforceable, binding contract when they began employment with Defendant. Defendant requests the Complaint be dismissed and the proceedings be stayed pending arbitration. Plaintiffs argue the Agreement lacked consideration due to a lack of mutuality of obligation, is both substantively and procedurally unconscionable, and that proper notice to potential class members should be issued before deciding on arbitrability issues.

Motion for Leave to File Sur-Reply *Instanter*

At the outset, the Court will address Baker's Motion for Leave to File Sur-Reply *Instanter*. (Doc. 11). Baker argues "Defendant's Reply contains several new arguments to which Named Plaintiff did not have an opportunity to respond." *Id.* at 1. Baker also asserts Defendant violated the page number requirement of Local Rule 7.1(f). *Id.* Defendant asserts its reply does not contain new arguments and is compliant with the Local Rules. *See* Doc. 12.

"[S]ur-replies may be allowed 'when new . . . arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, 550 F. Supp. 3d 488 (N.D. Ohio 2021) (citations omitted). Sixth Circuit case law establishes that when a reply brief merely responds to arguments presented in a response,

5

no new evidence or arguments have been presented, and therefore a sur-reply is not proper. *Key v. Shelby Cnty.*, 551 F. App'x 262, 264-65 (6th Cir. 2014).

Here, Baker contends Defendant asserted two new arguments in its reply: "(1) that the Arbitration Agreement at issue is equally as binding on Defendant as it is on Plaintiff and (2) Defendant's admission that notice to the potential opt-in plaintiffs is appropriate here before a decision is made on the enforceability of those individuals' potential arbitration agreements." (Doc. 11, at 1). The Court does not find either argument to be new, but merely responses to arguments raised by Plaintiff's opposition. Even if the Court were to consider Plaintiffs' contention that Defendant's argument regarding whether it is bound to the Agreement despite its purported silence constitutes a new argument, such a contention is ultimately immaterial to the Court's analysis.

As it relates to the Local Rule 7.1(f), Plaintiff argues the Court should strike Defendant's reply because it violates the page number requirement. This hinges on whether the Motion to Compel Arbitration be treated as a dispositive motion. Local Rule 7.1(f) states that, in a standard case such as this, "memoranda relating to dispositive motions must not exceed . . . twenty (20) pages" and "[m]emoranda relating to all other [non-dispositive] motions must not exceed fifteen (15) pages in length." Local Rule 16.1(b)(5) states:

> "Dispositive Motions" shall mean motions to dismiss pursuant to Fed. R. Civ. P. 12(b), motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), motions for summary judgment pursuant to Fed. R. Civ. P. 56, motions to remand pursuant to 28 U.S.C. § 1447, or any other motion which, if granted, would result in the entry of judgment or dismissal, or would dispose of any claims or defenses, or would terminate the litigation.

Here, Defendant's motion asks the Court to dismiss Plaintiffs' Complaint. Moreover, district courts in the Sixth Circuit have regularly treated motions to compel arbitration as dispositive motions. "Motions to compel arbitration, although not specifically listed in Local Rule

7.2(a), are included as 'other dispositive motions as defined by law' because if a motion to compel arbitration is granted, the case will proceed in a different forum." *Costello v. Patterson Dental Supply, Inc.*, 2007 WL 4178942, at *3 (W.D. Mich.) (citations omitted).

Therefore, the Court finds Defendant's reply brief is compliant with Local Rule 7.1(f). Plaintiff's Motion to Strike Defendant's Reply and for Leave to File Sur-Reply *Instanter* is denied.

Valid Arbitration Agreement

Defendant contends Plaintiffs contracted to arbitrate claims arising from their employment when they electronically signed the Agreement during their employment application process. (Doc. 6, at 4). Plaintiffs argue there is a lack of consideration for the Agreement due to a lack of mutuality of obligation. (Doc. 8, at 3). Defendant responds that valid consideration requires a benefit to the promisor and a detriment to the promise that is more than *de minimis* and does not require identical obligations. (Doc. 10, at 4).

The Court's first task is to analyze whether the parties agreed to arbitrate. In doing so, it "must first determine that a valid agreement to arbitrate exists." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citing 9 U.S.C. § 2; *Stout*, 228 F.3d at 714). To do so, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (courts "review the enforceability of an arbitration agreement according to the applicable state law of contract formation") (citing *id.* at 943-44). As such, arbitration agreements "may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Fazio*, 340 F.3d at 393-94 (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

7

For there to be a valid contract under Ohio law, both parties must consent to the terms, there must be a meeting of the minds, and the terms of the contract must be definite and certain. *Ta v. Chaudhry*, 2016-Ohio-4944, at ¶ 12 (Ohio Ct. App.). For there to be a meeting of the minds, "there must be a definite offer on one side and an acceptance on the other." *Daily Servs. LLC v. Transglobal, Inc.*, 221 N.E.3d 868, 882-83 (Ohio Ct. App. 2023) (citation modified). Additionally, for the terms to be definite and certain, the essential terms must be specific as to "the identity of the parties to be bound, the subject of the contract, and consideration." *Ta*, 2016-Ohio-4944, at ¶ 13. Valid consideration requires that the parties bargain for performances or return promises. *Harmon v. Philip Morris, Inc.*, 120 Ohio App. 3d 187, 190 (1997) (quoting Restatement (Second) of Contracts § 71(2) (1981)).

Here, the offer from Defendant was employment, with the condition that all claims arising out of employment (excluding certain claims) would be subject to arbitration. The acceptance was when Plaintiffs signed the employment contracts including the arbitration provision. The terms of the Agreement are definite and certain because they include what claims are subject to arbitration, and Plaintiffs consented to those terms when they electronically signed the Agreement.

Plaintiffs argue the motion to compel should be denied because the Agreement does not amount to a valid contract for lack of mutuality of obligation. (Doc. 8, at 3-4). In support, they cite cases where courts have held a mutual obligation to arbitrate acts as sufficient consideration. *Id.* at 4-5. Defendant points out – and this Court agrees – that just because courts have found consideration present when a mutual obligation to arbitrate is present, does not automatically mean that a mutual obligation to arbitrate is required to satisfy the consideration prong. (Doc. 10, at 13-14). Ohio courts have consistently found mutual obligation to arbitrate is not required:

> Ohio law applies here, and there is no indication that Ohio courts have adopted the California rule. On the contrary, an Ohio Appeals Court recently held that mutuality

8

> is not a requirement of a valid arbitration clause if the underlying contract is supported by consideration. *Joseph v. M.B.N.A. Am. Bank, N.A.,* 148 Ohio App.3d 660, 664, 775 N.E.2d 550, 553 (2002). This appears to be the general trend. *See Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 179–80 (3rd Cir.1999) (collecting cases and concluding that mutuality of obligation is generally satisfied in arbitration agreements if the underlying contract is supported by consideration). There is no doubt here that the underlying contract was supported by consideration.

*Fazio*, 340 F.3d at 396-97.

Further, courts have routinely found employment or continued employment to be satisfactory consideration in the arbitration context. "Plaintiff's continued employment, therefore, constituted consideration to support the arbitration agreement." *Rupert v. Macy's, Inc.*, 2010 WL 2232305, at *8 (N.D. Ohio) (citing *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 864 (N.D. Ohio 2003) ("[W]here an employer informs its employees that from this point forward, certain disputes must be directed to arbitration, while the employees are not obligated to continue in their employment, as long as they do, they are obligated to comply with the terms set by the employer . . . . The consideration is given by the employer when the employee accepts the offer of continued employment.")). "In Ohio, a valid arbitration clause does not fail for lack of mutuality, as long as consideration supports the contract." *Price v. Taylor*, 575 F. Supp. 2d 845, 853 (N.D. Ohio 2008) (citing *Anderson v. Delta Funding Corp.,* 316 F.Supp.2d 554, 566–67 (2004); *see Dantz v. Am. Apple Grp.*, 123 F. App'x 702, 708 (6th Cir. 2005) (holding an employer made an offer for a unilateral contract involving mandatory and binding arbitration which the employee accepted by his continued employment). Here, the Agreement very clearly states: "In consideration of employment or continued employment, I agree The Fremont Company has the right to elect binding arbitration, as set forth in this Agreement." (Doc. 6-1, at 15). It is undisputed that Plaintiffs signed the Arbitration Agreement and continued to work for Defendant thereafter. Accordingly, the Agreement does not fail for lack of mutuality of obligation or consideration.

Unconscionability

Plaintiffs further assert the Agreement is unenforceable because it is substantively and procedurally unconscionable. (Doc. 8, at 7).

Ohio's unconscionability doctrine has two components: "'(1) substantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible.' Both elements must be present to find a contract unconscionable." *Goff v. Nationwide Mut. Ins., Co.*, 825 F. App'x 298, 303 (6th Cir. 2020) (quoting *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 143 Ohio App. 3d 708, 718 (2001). To demonstrate an arbitration clause is unenforceable, the party asserting unconscionability must prove that the clause is both substantively and procedurally unconscionable under Ohio law. *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 67 (2009).

*Procedural Unconscionability*

Plaintiff asserts the Agreement is procedurally unconscionable because (1) the parties had unequal bargaining power, (2) the terms of the agreement were not explained to him, and (3) he was not represented by counsel. (Doc. 8, at 10-11). Defendant contends the relevant inquiry for procedural unconscionability is whether, using an objective standard, Plaintiff had reasonable opportunity to understand the terms of the Agreement and the arbitration provision is not buried in fine print. (Doc. 10, at 16).

When determining if an agreement is procedurally unconscionable, Ohio courts consider factors that bear "on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alteration in the

10

printed terms were possible." *Morrison*, 317 F.3d at 666 (quoting *Cross v. Carnes*, 132 Ohio App. 3d 157, 170 (1998)). As to procedural unconscionability, the Ohio Supreme Court has held, "[t]he crucial question is whether 'each party to the contract, considering his obvious education or lack of it, had a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print[.]'" *Lake Ridge Acad. v. Carney*, 66 Ohio St. 3d 376, 383 (1993) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). The Sixth Circuit has further held unequal bargaining power alone is not enough; there must be "a vast disparity[.]" *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017-18 (6th Cir. 2005).

Plaintiffs argue the factors of "education, business acumen and experience, and who drafted the contract, all further support a finding of unequal bargaining positions here." (Doc. 8, at 9).

> The relevant language of the Agreement states:
>
> I understand that this Agreement does not give me the right to elect binding arbitration and that such a right is reserved exclusively to The Fremont Company. I understand that The Fremont Company's election of binding arbitration would preclude my right to pursue legal action in any state or federal court and would be my exclusive remedy. I also understand that if The Fremont Company elects binding arbitration, I will not have a right to a trial by jury.
>
> In consideration of employment or continued employment, I agree that The Fremont Company has the right to elect binding arbitration, as set forth in this Agreement. This Agreement is binding upon me, my heirs, successors, and assigns.

(Doc. 6-1, at 15).

Here, the parties' relative bargaining power is unequal due to the nature of an employee-employer relationship; however, it does not appear to be a vast disparity. *See Hines v. Nat'l Ent. Grp., LLC*, 140 F.4th 322, 330 (6th Cir. 2025) (citing *Vanyo v. Clear Channel Worldwide*, 808 N.E.2d 482, 487 (2004) ("[m]ere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement."). Further, although Defendant drafted the

11

Agreement, the Court finds the terms of the Agreement were laid out on one page, in plain English, and not buried in fine print. The Court finds that, contrary to Plaintiffs' argument regarding their lack of education, business acumen, or experience, the language in the Agreement precluding Plaintiffs from "pursu[ing] legal action in any state or federal court" and specifying they "will not have a right to a trial by jury," are direct and easily understandable to an average person without requiring advanced education or specialized business knowledge to comprehend. Further, Plaintiffs were allowed to take however long was necessary to read and understand the terms of the Agreement. (Stark Decl., at ¶ 11). Thus, the agreement is not procedurally unconscionable. Because Plaintiff has not demonstrated procedural unconscionability the Court need not examine substantive unconscionability as a showing on both prongs of the test is required. *Hayes*, 122 Ohio St. 3d at 67 (2009).

Therefore, the Court finds a valid agreement to arbitrate that must be enforced consistent with the Sixth Circuit's "strong presumption in favor of arbitration". *Huffman*, 747 F.3d at 394-95.

Cost-Splitting and Attorney's Fees

Plaintiffs contend that should the Court determine the arbitration agreement is enforceable, it should at least strike the Agreement's "unconscionable and unenforceable" cost-splitting and attorney's fees provisions. (Doc. 8, at 1).

*Cost-Splitting*

The Agreement states: "All fees and expenses of the arbitration, including a transcript if either party requests, will be borne by the parties equally." (Doc. 6-1, at 15). The Supreme Court has held, "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood

of incurring such costs." *Green Tree Fin. Corp.*, 531 U.S. at 92. Plaintiff fails to show arbitration would be prohibitively expensive. Cost-splitting provisions are not *per se* unconscionable and must be assessed on a case-by-case basis. *Morrison*, 317 F.3d at 658-59. Courts have held cost-splitting provisions unenforceable where they would have "the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights." *Id.* at 661. "Notably, the mere fact that arbitration might impose higher fees than litigation in trial court is insufficient." *Holmer v. Alcove Ventures, LLC*, 2024 WL 4350906, at *4 (N.D. Ohio).

Here, Plaintiffs have not provided evidence that the costs would be so high as to be chilling or have a deterrent effect. Since Plaintiffs failed to meet their burden, the cost-splitting provision stands.

*Attorney's Fees and Costs of the Action*

Plaintiffs argue the arbitration clause should be invalidated because it does not allow a prevailing FLSA plaintiff to recover attorney's fees, which contradicts 29 U.S.C. § 216(b). (Doc. 8, at 14). Defendant does not address this argument, but generally asserts the Court may sever any portion of the Agreement if it deems an unconscionable aspect.

The FLSA mandates an award of attorney's fees and costs to a prevailing plaintiff: "The court in [an FLSA] action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). The Supreme Court has "recognized that federal statutory claims can be appropriately resolved through arbitration, and [it has] enforced agreements to arbitrate that involve such claims." *Green Tree Fin. Corp.*, 531 U.S. at 89 (citations omitted). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated . . . 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the

13

arbitral forum'". *Id.* at 90 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). Therefore, if Plaintiffs win, the arbitrator shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" 29 U.S.C. § 216(b), as this would mean Plaintiffs "vindicated" their statutory cause in the arbitral forum. Defendant does not contest, neither in the Agreement nor briefing, that Plaintiffs would be entitled to attorneys' fees and costs pursuant to the FLSA statutory provision if they succeed in arbitration.

Stay Versus Dismissal

Defendant asks this Court to dismiss the proceedings if the case is compelled to arbitration. (Doc. 6, at 10). Plaintiff argues this Court should stay the proceedings rather than dismiss. (Doc. 8, at 15). The Supreme Court recently clarified that the proper procedure is to stay a filed lawsuit when a trial court compels arbitration: "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); accord *Wallace v. Fam. Dollar Stores of Ohio, LLC*, 2024 WL 1605922, *1 (S.D. Ohio) (citing *Arabian Motors Grp. v. Ford Motor Co.*, 19 F.4th 938, 941-42 (6th Cir. 2021)). Therefore, the Court stays the proceedings as to Plaintiffs Baker and Arnett.

Notice to Potential Opt-In Plaintiffs

The sole remaining issue pertains to potential opt-in Plaintiffs. Plaintiffs argue the Court should deny the Motion to Compel in its entirety at this juncture because it "should not handle matters of arbitrability until *after* resolving the issue of sending out notice to the potential opt-in plaintiffs as alleged in the Complaint." (Doc. 8, at 11). "Defendant does not dispute Plaintiffs' contention that opt-in notice should be sent to potential opt-in Plaintiffs before the issue of

14

arbitrability is resolved regarding **those** potential opt-in Plaintiffs. However, regarding Plaintiffs Baker and Arnett, the Court should stay the proceedings and compel their claims to arbitration pursuant to the Arbitration Agreement." (Doc. 10, at 24) (emphasis added).

According to Sixth Circuit precedent, "once a motion to compel arbitration is filed, 'the district court [must] refrain from further action' and must 'first determine whether there is a written agreement to arbitrate between the parties[.]'" *Southard v. Newcomb Oil Co.*, 2019 WL 8111958 (6th Cir.) (quoting *Midwest Mech. Cont., Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 750 (5th Cir. 1986)). As to the only current Plaintiffs, Baker and Arnett, the Court finds a valid arbitration agreement exists and therefore grants Defendant's Motion to Compel. The Court stays the proceedings in this case.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion for Leave to File Sur-Reply Instanter (Doc. 11) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Defendants Motion to Compel Arbitration (Doc. 6) be, and the same hereby is, GRANTED;

FURTHER ORDERED that further proceedings in this matter, as to Plaintiffs Baker and Arnett, be STAYED pending resolution of arbitration.

    s/ *James R. Knepp II*
    UNITED STATES DISTRICT JUDGE

Dated: July 22, 2025